# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3669 | **DATE** | 9/22/2000 |
| **CASE TITLE** | Stanley Jones vs. Sheriff Michael Sheahan, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to strike portions of plaintiff's response [36] is denied. Plaintiff's motion for declaratory judgment [21] is denied. Defendants' motion to dismiss [17] is granted in part and denied in part. Plaintiff is given 30 days from the date of this memorandum opinion and order to submit a second amended complaint. The Clerk is directed to send plaintiff one copy of the civil rights complaint form and instructions for filing along with a copy of this memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

JJK

courtroom deputy's initials

number of notices

SEP 25 2000

date docketed

docketing deputy initials

date mailed notice

**Document Number**

37

FILED FOR DOCKETING

00 SEP 22 PM 1: 14

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STANLEY JONES,            )
                               )
        Plaintiff,        )
                               )     No. 99 C 3669
      v.                )
                               )     Magistrate Judge Sidney I. Schenkier
SHERIFF MICHAEL SHEAHAN,     )
DOCTOR DUNLAP, JAMES EDWARD,  )
ERNESTO VELASCO           )
                               )
        Defendants.      )

DOCKETED
SEP 2 5 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Stanley Jones, a detainee at the Cook County Department of Corrections ("Cook County Jail"), brings this *pro se* action pursuant to 42 U.S.C. § 1983, against defendants Michael Sheahan, Sheriff of Cook County; Doctor Dunlap, a doctor at Cook County Jail; James Edwards,[1] the superintendent of Division 9 at Cook County Jail (the protective custody unit); and Ernesto Velasco, the director of Cook County Jail. All defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. #17-1). Mr. Jones has filed a response and a "Motion for Declaratory Judgement" (Doc. # 21-1). Defendants have filed a reply in support of their motion to dismiss, and a motion to strike portions of plaintiff's response (Doc. # 36-1).

---

[1] Mr. Jones referred to this defendant by the name "Edward" in the caption but refers to him as "Edwards" throughout the amended complaint, which is also the spelling that defendants use. The Court will accordingly refer to this defendant as "Edwards."

The parties have consented to have this case heard by a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, plaintiff's motion for declaratory judgment is denied; defendants' motion to strike is denied; and defendants' motion to dismiss is granted in part and denied in part.

## I.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the Court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 120 S.Ct.2691 (2000). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed." *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

While it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir. 1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). All plaintiffs – whether *pro se* or represented – must include

2

in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990).

**II.**

In line with the foregoing authorities, the following factual statement is drawn from plaintiff's pleadings. Although Mr. Jones does not do so in his 29-page amended complaint, we discuss his allegations under the four claims Mr. Jones seeks to assert: (a) an alleged failure to protect him from assault by other inmates; (b) an alleged deliberate indifference to his serious medical needs; (c) allegedly unconstitutional conditions of confinement; and (d) alleged retaliatory transfer out of protective custody.

**A.**

Mr. Jones alleges that he entered Cook County Jail sometime in 1997. Mr. Jones is not a gang member, and he asserts that gang members target non-affiliated inmates. Mr. Jones alleges that gang members assaulted him on four occasions while he was in general population, which led to his transfer to Division 9, the protective custody unit, in January 1999. However, on March 7, 1999, while in Division 9, two gang members attacked Mr. Jones because he would not leave a table when they demanded that he do so. As a result of this March 1999 attack, Mr. Jones suffered a dislocated left shoulder, as well as injuries to the left kidney area, lower left anterior rib cage area, and left hip.

Mr. Jones alleges that defendants Sheahan, Velasco, and Edwards were aware that the practice of housing detainees who are not gang members together with gang members creates a high-risk environment for persons like Mr. Jones, who is not a gang member. Mr. Jones alleges that despite this knowledge, these defendants have instituted no safeguards for detainees who are not gang members. Although separate housing is provided for certain other groups of detainees (for

example, a workers' deck, medication deck, writ deck, and school deck), no provision has been made to separate non-gang member detainees from gang members – even in the protective custody unit. Mr. Jones alleges that, as the on-site superior official in Division 9, Edwards was aware of the danger from gangs but failed to provide any measures that would have prevented the March 7, 1999 attack. Mr. Jones also specifically alleges that defendants Sheahan, Velasco, and Edwards have allowed this situation to persist as a result of an "*alliance*" between officials and gangs (Am. Compl. at P. 14) (emphasis original).

## B.

Mr. Jones asserts that the defendants were deliberately indifferent to a variety of injuries and illnesses he suffered in Cook County Jail.

First, Mr. Jones claims that in 1997, when he was in Division 8, he suffered unbearable headaches for three months because the air-conditioning unit was not properly maintained. It was only after he became crazed from pain, went berserk, and wrote the state senator, that the unit was serviced and he was allowed to see a doctor, who administered effective treatment.

Second, Mr. Jones claims that in early 1997, he alerted the medical department about two tumors he had. Because of lost records and the like, it was not until September 1997 that he finally signed consent forms for an operation to remove the tumors. Although the operation was supposed to have been performed in November 1997, it was June 1998 before he finally had the surgery because paperwork had been lost. Mr. Jones alleges that these incidents illustrate the problem with medical care at Cook County Jail – that is, it takes a long time to see a doctor and treatment is often ineffective.

Third, Mr. Jones claims that he has never received medication to cure a severe foot fungus, or medicine for a persistent congested head condition.

Fourth, Mr. Jones claims that, after the March 1999 attack, he was taken to Cook County Hospital where he received treatment for his shoulder injury, but not for other injuries. For the next two weeks, Mr. Jones made numerous requests for treatment of his other injuries. In or about the third week of March 1999, Dr. Dunlap examined him; she told Mr. Jones that she had not seen him earlier because she did not receive any records or information that further medical treatment was required. Dr. Dunlap concluded that the pain in Mr. Jones's kidney and rib case areas was caused by bruised muscles, and scheduled him for an x-ray for his hip injury. She also prescribed pain medication.

Dr. Dunlap saw Mr. Jones again about one week later, and told him that the x-rays did not reveal any abnormalities. When Mr. Jones complained that problems still persisted from the hip injury, Dr. Dunlap became upset and asked Mr. Jones if he had attended medical school. Dr. Dunlap thereupon abruptly concluded the examination, and sent Mr. Jones back to his unit without further medical care.

On April 8, 1999, Michael V. Velarde, Chief of the Jail and Detention Standards Unit of the Illinois Department of Corrections, spoke to Mr. Jones in response to the letters Mr. Jones had written about his problems. Mr. Jones claims that because Mr. Velarde had spoken with Superintendent Edwards before seeing him, Mr. Velarde seemed "primed" to disbelieve Mr. Jones's accounts regarding his medical complaints. Mr. Velarde said that he would ensure that Mr. Jones saw a doctor and then left.

Later that day. Dr. Dunlap saw Mr. Jones. He alleged that Dr. Dunlap seemed annoyed, and she told him that he would be prescribed pain medication in Division 11, the division to which he was being transferred immediately. Mr. Jones alleges that the doctor in Division 11 has not eliminated his hip problem.

## C.

Mr. Jones raises a number of complaints about the conditions at Cook County Jail. He claims that he has been exposed for months to extremely loud noise 24 hours a day stemming from televisions being played at full volume, inmates shouting, and the like. Mr. Jones claims he was almost driven insane by this noise, and lost so much weight that he was transferred back to Division 8, the Psychiatric Unit.

Mr. Jones also claims that his vision has deteriorated because of the sodium lamps used in Division 9. As a result, he now must wear bifocal glasses.

Finally, Mr. Jones alleges that plumbing problems at Cook County Jail often result in no hot water for showers and no, or inadequate, heat in winter.

## D.

Mr. Jones claims that, after being treated at Cook County Hospital for injuries suffered in March 1999, he was returned to Division 9 and was not separated from his assailants. Mr. Jones claims that thereafter, in April 1999, he was transferred from Division 9 to Division 11.

Mr. Jones claims that this transfer was not designed as a safety measure, as his assailants were transferred along with him. Mr. Jones claims that the transfer was to prevent him from further "wave making." Mr. Jones alleges that when Mr. Velarde visited him immediately before the transfer, Mr. Velarde told him that it was none of his business to assist a fellow detainee with legal

actions. Mr. Jones thus claims that the transfer to Division 11 was part of a plan discussed by defendants Edwards and Dunlap to separate Mr. Jones from that detainee, and to assure that the gangs would satisfy Mr. Edwards's desire to retaliate against Mr. Jones for his medical complaints through an assault at some unspecified future date.

## III.

The Court will address first Mr. Jones's motion for declaratory judgement. It appears that Mr. Jones is claiming that jail officials are interfering with his right to legal access, and as a result, seeks various orders from the Court to ensure that right. To be sure, prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, in order to demonstrate that his right of access to courts has been compromised, Mr. Jones must show that any alleged interference hindered his efforts to pursue a legal claim and resulted in actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

In this case, Mr. Jones's declaratory judgment motion demands a variety of supplies and assistance to "permit his effective addressment of his legal needs as a pro-se representative" (Mot. for Decl. Judgmt, at 1). However, Mr. Jones's 29-page amended complaint does not allege that he has been deprived of access to the courts. Indeed, the fact that Mr. Jones has filed his lengthy complaint, a motion for declaratory judgment, and a 21-page typewritten response to the motion to dismiss (with numerous citations to case law) is inconsistent with his assertion that his access to the courts has been hindered. *Cf. Lewis v. Casey*, 518 U.S. at 351. Accordingly, plaintiff's motion for declaratory judgment is denied.

## IV.

The Court next considers defendants' motion to strike. Defendants point out that Local Rule 7.1 imposes a page limit of 15 pages for a brief in support of or in opposition to a motion without leave of court. Since Mr. Jones did not seek leave of court and his response is 21 pages long, defendants ask that pages 16 through 21 be stricken. Because Jones is proceeding *pro se*, the Court denies the motion. However, Mr. Jones is now on notice that any briefs that may be filed in the future **may not be longer than 15 pages unless he is given leave of court.** Any future briefs that exceed the 15-page limit without prior approval of the Court will be stricken in their entirety.

Defendants also allege that Mr. Jones has pleaded new facts in his response that were not in his amended complaint, and thus seek to have them stricken. Defendants cite *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987), which held that the record for review under Rule 12(b)(6) is limited to the language of the complaint itself, and that the complaint may not be amended by the briefs filed by a plaintiff in opposition to a motion to dismiss.

However, in recent years, the Seventh Circuit has taken a different view toward responses to motions to dismiss that refer to facts not originally pleaded. Mindful that the Federal Rules of Civil Procedure require notice and not fact pleading, the Seventh Circuit more recently has held that "'[a] plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief' in order to defeat a motion to dismiss if these facts are consistent with the allegations in the complaint." *Hentosh v. Herman M. Finch University*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999) *(quoting Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)).

Defendants specifically seek to strike the following statements found in Mr. Jones's response:

1. "Defendants subjected plaintiff to these abuses knowingly and willfully when defendants failed [to] correct inadequacies or impropriety even after defendants had been repeatedly notified through verbal and written appeals from the plaintiff . . . as would also apply regarding defendants being approached on three separate occasions by said investigators." Response, page 2, lines 6-10.

2. "Consequently, from the date of 10/7, through approximately 4/99, defendants subjected plaintiff to physical and psychological pain . . .." Response, page 2, line 18.

3. ". . . when he was subjected to a period in excess of 2 years that were continually characterized by severe and recurrent head pains, mental anguish, anxiety . . . on a daily basis for a period in excess of 6 to 8 months . . .." Response, page 5, lines 19.

4. "Defendants were informed both verbally and in writing at the time of plaintiffs' [sic] request to be placed in protective custody (approx. 2/8/99)." Response, page 13, lines 2-4, see also line 23, see also page 14, lines 26-27, page 15, line 1.

5. "Plaintiff's placement in protective custody occurred per plaintiffs request to be so housed, in hopes of avoiding further attacks." Response, page 13, lines 22-23.

6. "Moreover, plaintiff informed defendants concurrent with his request to be placed in protective custody that he was in danger." Response, page 14, lines 26-27 and page 15, line 1.

7. "Plaintiff in this case REQUESTED and ACCEPTED protective custody . . .." Response, page 8, line 30 and see page 13 lines 21-23.

8. ". . . during the three (3) year period the plaintiff has been incarcerated in the jail . . . Not once has he seen either of these defendants conduct a tour of the jail and speak with the detainees...as would allow for the detainees to bring any situation that was being suppressed by their subordinates to their attention . . . or for the sake of conducting a first hand view of the conditions within the units." Response page 12, lines 9-14.

9. "The grievance system provided by defendants is rendered practically useless because often the individual the grievance complains about is also the very person that must be relied upon [sic] to deliver the grievance to the committee that evaluates the complaints." Response page 12, lines 17-20.

10. ". . . almost totally deprived access to controlling officials . . .." Response, page 12, lines 25-26.

The Court concludes that these factual assertions are consistent with the allegations of the amended complaint. The Court accordingly denies defendants' motion to strike as to the newly-pleaded facts in Mr. Jones's response.

## V.

Mr. Jones seeks to assert essentially four claims: (1) that defendants failed to protect him from inmate assault; (2) that defendants were deliberately indifferent to his serious medical needs; (3) that the conditions of his confinement violated the Constitution; and (4) that defendants transferred him from the protective custody unit in retaliation.[2] The court will consider each claim in turn.

## A.

In *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997), the Court of Appeals summarized the principles to be applied in cases in which an inmate claims jail or prison officials have failed to protect him from inmate assaults:

> "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 831-33 (1994); *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir. 1996). Failure to provide such protection, however, violates the Eighth Amendment's prohibition of cruel and unusual punishment only if "deliberate indifference by prison officials [to the prisoner's welfare] effectively condones the attack by allowing it to happen[.] *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996); *Jelinek* [*v. Greer*], 90 F.3d [242] at 244 [(7th Cir. 1996)]. Thus, in order that he might sustain his Eighth Amendment claim, . . . [an inmate] must demonstrate that the defendants had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent

---

[2] As a pretrial detainee, only the Due Process Clause of the Fourteenth Amendment is applicable to Mr. Jones. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996); *Anderson v. Gutschenritter*, 836 F.2d 346, 348-49 (7th Cir. 1988). However, the standard for analyzing a pretrial detainee's Fourteenth Amendment Due Process Claim is identical to the standard employed to judge a convicted inmate's Eighth Amendment cruel and unusual punishment claim. *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir. 1986).

the harm can be inferred from the defendant's failure to prevent it." *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991) [*cert. denied*, 503 U.S. 907 (1992)]. It is not enough that a reasonable prison official would or should have known that the prisoner was at risk: the official must actually know of and disregard the risk to incur culpability. *Farmer*, 511 U.S. at 837-38 . . ..

In *Lewis*, the Seventh Circuit affirmed a grant of summary judgment for the defendants where the plaintiff did not seek protection from the two inmates who assaulted him, or inform defendants of threats made against him shortly before the attack. In so doing, however, the appeals court explained that deliberate indifference may be found where "prison officials fail to protect an inmate who belongs to an identifiable group of prisoners for whom the risk of assault is a serious problem of substantial dimensions, including prisoners targeted by gangs." *Lewis*, 107 F.3d at 553. To prevail on a theory of "gang targeting," an inmate must show that the defendants "either took no precautions to avoid a known hazard which the gang presented, or that the precautions they took ignored the risk which the targeted inmates faced." *Id.*

With these principles in mind, the Court examines Mr. Jones's allegations. The March 7, 1999 attack on Mr. Jones occurred about five weeks after his placement in protective custody. The attack allegedly happened when Mr. Jones refused to relinquish a table to two gang members when they demanded it. Mr. Jones makes no allegation that the jail officials knew of a specific risk posed by these two individuals (or, for that matter, by any of the persons who allegedly committed the four prior attacks on plaintiff while he was in the general population). If that was all that Mr. Jones alleged, this claim could not survive under *Lewis*.

But Mr. Jones alleges more. The main thrust of Mr. Jones's amended complaint appears to be that, by not separating gang members from unaffiliated detainees, jail officials have allowed a prevailing atmosphere of violence to fester. Pervasive violence in a prison or jail may create

11

unconstitutional conditions of confinement. *See Lewis*, 107 F.3d at 554; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). Mr. Jones alleges that he is a member of an identifiable group (non-gang member detainees), which is targeted by gang members. He alleges that the risk is a serious one that led to five assaults – including one in the protective custody division, where he was transferred to be safe from such assaults. Mr. Jones further alleges that defendants Sheahan, Velasco and Edwards knew of this risk and failed to take any precautions to address it.

Whether Mr. Jones can prove all of this, of course, remains to be seen. But for now, his allegations are sufficient under *Lewis* to state a claim.

## B.

Mr. Jones has made four allegations in regard to his medical care: (1) that there was an inordinate delay in removing two tumors; (2) that there was a delay in treating the kidney, rib, and hip injuries he suffered in the March 7, 1999 assault, and the hip injury still has not been cured; (3) that he has not been given medicine to cure a foot fungus, or to treat a persistent congested head condition; and (4) that there was a delay in giving him medication in 1997 for persistent and severe headaches.

In order to state a Section 1983 claim for denial of medical care, an inmate must allege deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Allegations of mere negligence or inadvertence in the diagnosis or treatment of a medical condition will not suffice. *Id.* at 105-06. In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court explained that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety."

The Seventh Circuit recently has reaffirmed that deliberate indifference "involves a two-part test":  (1) an objective component, which looks to whether the medical condition was serious, and (2) a subjective component, which looks to whether the defendants were deliberately indifferent to a serious medical need. *Sherrod v. Lingle*, ____ F.3d ____, 2000 WL1046586, *5 (7th Cir., July 27, 2000).  To act with deliberate indifference, defendants "must 'want harm to come to the prisoner,' or, at least, must possess 'total unconcern for a prisoner's welfare' in the face of 'serious risks.'" *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992) (*quoting McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991), *cert. denied*, 503 U.S. 907 (1992).

With these standards in mind, we address Mr. Jones's various claims of deliberate indifference to his medical needs.  Many of those claims fail under the first prong of the *Sherrod* two-part test because they involve conditions that cannot objectively be described as "serious." Although no doubt unpleasant, a foot fungus, *Landfair v. Sheahan*, 878 F. Supp. 1106, 1112-13 (N.D. Ill. 1995), and headaches and congestion, *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980), do not rise to the level of seriousness necessary to establish a basis for a deliberate indifference claim.[3]

That leaves Mr Jones's other claims of alleged deliberate indifference to the kidney, rib, and hip injuries from the March 1999 assault, and the tumors.  It is not clear how serious these conditions were.  No allegation is made concerning the nature of the tumors, and the alleged injuries to Mr. Jones's rib and kidney areas and his hip were apparently not sufficiently serious to lead the doctors

---

[3]Moreover, Mr. Jones's amended complaint concedes that he received treatment that resolved his 1997 complaint of headaches, and the "Detainee Health Service Request Form" attached to the amended complaint shows that he received treatment for congestion.  As we explain below, the fact that the treatment may not have been fully effective does not render his deliberate indifference claims viable.

at Cook County Hospital to treat them at the time they treated the shoulder injury suffered in the same attack. Nonetheless, giving the allegations of the amended complaint a generous interpretation in Mr. Jones's benefit, as is required, it cannot be said that tumors which require surgical intervention, and rib, kidney and hip injuries suffered in a beating might not be "serious" enough to satisfy the first prong of the *Sherrod* test. However, these medical claims fail for other reasons.

As for the delay in the surgery for his tumors, this claim fails for lack of cognizable injury. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), provides that prisoners may not bring civil actions for mental or emotional injury without a prior showing of physical injury. *See also Robinson v. Page*, 170 F.3d 747, 749 (7th Cir. 1999) (if the only form of injury claimed in inmate's suit is mental or emotional, the suit is barred in its entirety). But that is all Mr. Jones alleges here. Indeed, in response to defendants' arguments that he suffered no harm from any delay, Mr. Jones asserts only that he experienced "the anguish and worry he experienced in not knowing whether the tumors were malignant, and from not knowing if his life was about to end [as a] result of those tumors." (Pl. Resp. Mem. at 18). There is no allegation of any accompanying physical harm. This claim is accordingly dismissed.

As for the injuries to his hip and kidney/rib cage areas, Mr. Jones does not claim that defendants ignored those injuries; rather, he quarrels with the promptness and efficacy of the treatment he received. After his return from Cook County Hospital, it was two weeks before Dr. Dunlap saw him for these injuries. Dr. Dunlap diagnosed bruised muscles in his kidney and rib cage areas and scheduled him for an x-ray for his hip injury, and prescribed pain medication. In a visit the next week, Dr. Dunlap did not have the results of the x-rays immediately at her fingertips but called to get the results, which indicated no discernible injury. Mr. Jones complains that, even after

his transfer to another division and seeing another doctor, his hip still hurts him, despite being prescribed pain medication.

These allegations are insufficient to state a claim that the defendants' conduct in dealing with these injuries reflected a total unconcern for Mr. Jones's welfare in the face of serious risks. *Duane*, 959 F.2d at 676. The mere fact that Mr. Jones quarrels with the course of treatment he received does not establish deliberate indifference; indeed, even the fact that another doctor might have chosen a different course of treatment is insufficient to make out a constitutional claim. *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir.), *cert. denied*, 519 U.S. 817 (1996). *See also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997) (explaining the distinction between medical judgment and deliberate mistreatment). A claim of deliberate indifference requires allegations that a doctor knew of a serious medical need and disregarded it; and to show such disregard, a plaintiff must show that the doctor's response "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In this case, there is nothing in Mr. Jones's pleadings to suggest that Dr. Dunlap demonstrated such "an absence of professional judgment." Dr. Dunlap diagnosed Mr. Jones's condition; ordered an x-ray that showed no hip injury (the fact that the doctor did not have the x-ray at her fingertips but instead called for the results does not state a claim for deliberate indifference); and gave Mr. Jones pain medication. Even though Mr. Jones claims that the hip injury has not been cured (apparently the rib and kidney area problems have resolved themselves), the mere fact that a prisoner's ailments are not cured is not indicative of deliberate indifference. *See Snipes v. DeTella*,

95 F.3d 586, 592 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997) ("to say the [Constitution] requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd"); *Estate of Cole*, 94 F.3d at 261-62 (failure to prevent a suicide was not deliberate indifference). Moreover, the brief delay in seeing a doctor upon Mr. Jones's return from Cook County Hospital is not actionable; nor is the fact that his condition was thereafter reviewed weekly rather than more frequently. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (six-day wait to see physician was not unreasonably long delay in view of fact that physician had seen prisoner one week earlier).

Mr. Jones has failed to state a claim for deliberate indifference as to the medical care he received and, accordingly, the defendants' motion to dismiss as to that claim is granted.

## C.

Mr. Jones has made four allegations regarding his conditions of confinement: (1) the air conditioning units are not properly maintained; (2) the noise is excessive; (3) the sodium lighting has damaged his vision; and (4) plumbing problems often result in no hot water for showers and no, or inadequate, heat in winter.

To prove a violation of the prohibition against cruel and unusual punishment in regard to an inmate's conditions of confinement, both an objective and a subjective prong must be met. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The objective prong asks whether the deprivation was sufficiently serious and looks to the conditions themselves. *Id.* at 298. The subjective prong is met if a prison official acts with deliberate indifference. *Id.* at 303.

Claims of inadequate ventilation, excessive noise, and inadequate heat are deprivations serious enough to meet the objective standard of *Wilson*, particularly since Mr. Jones specified

injuries he allegedly suffered as a result of each of these conditions. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (excessive noise states a claim); *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994) (prisoners must be provided with adequate heat and ventilation). However, from the rambling nature of both Mr. Jones's amended complaint and his response to the motion to dismiss, the Court cannot find allegations as to how the individual defendants acted with deliberate indifference as to these alleged conditions of his confinement. The amended complaint lacks coherent allegations as to how each of the defendants was aware of and deliberately indifferent to these conditions, so as to make them individually liable. Nor does the amended complaint allege that the defendants maintained policies or customs that they knew would result in the challenged conditions, so as to make them liable in their official capacities.

Accordingly, the Court grants the defendants' motion to dismiss on the claim concerning conditions of confinement. However, as to that claim, the Court will grant Mr. Jones leave to amend the complaint if he wishes to attempt to include allegations of how each of the defendants was personally deliberately indifferent to the conditions so as to create liability in their individual and/or official capacities.

## D.

Mr. Jones claims that he was transferred from the protective custody unit (Division 9) to a general population unit, in retaliation for his complaints and grievances regarding the conditions of his confinement and medical care and/or for his helping another inmate with his legal work. Inmates do not have a constitutionally protected liberty interest in remaining in any particular wing of a prison. *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988), *affirmed on other grounds sub nom.*

*Neitzke v. Williams*, 490 U.S. 319 (1989). Nevertheless, retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983, even if the acts, if taken for different reasons, would have been proper. *See DeWalt v. Carter*, ___ F.3d ___, 2000 WL 1137385, *10 (7ᵗʰ Cir., Aug. 11, 2000, Ill.), *Matzker v. Herr*, 748 F.2d 1142, 1150 (7ᵗʰ Cir. 1984). It is well-established that punishing inmates for filing grievances, or for assisting others in exercising their right of access, violates their constitutional rights. *See, e.g., Babcock v. White*, 102 F.3d 267, 274-75 (7ᵗʰ Cir. 1996).

In order to establish a claim of retaliation, a prisoner must show that his protected conduct was a motivating factor behind the complained of actions, and that the prison officials would not have taken the same actions absent the retaliatory motive. *Babcock*, 102 F.3d at 275. As the Seventh Circuit has explained, the burden on a prisoner in establishing such a claim is high. *Id.* However, whatever Mr. Jones's ultimate chance of success, he has – under the governing law – stated a claim in regard to the alleged retaliation in moving him out of the protective custody unit. The Court therefore denies defendants' motion to dismiss in regard to the alleged retaliatory transfer.

## VI.

Because the Court has found that Mr. Jones has stated two claims for alleged violation of his constitutional rights, we now turn to defendants' argument that none of the named defendants may be held liable in either their individual or official capacities.

## A.

Individuals cannot be held liable in a Section 1983 action unless they caused or participated in the alleged constitutional deprivation. *Vance v. Washington*, 97 F.3d 987, 991 (7ᵗʰ Cir. 1996),

18

*cert. denied*, 520 U.S. 1230 (1997); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of *respondeat superior* because that doctrine does not apply to § 1983 actions. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Mr. Jones appears to complain that the problem of "gang targeting" is a systemic problem throughout Cook County Jail, that persons such as Sheriff Sheahan, Director Velasco, and Mr. Edwards – by virtue of their positions – would realistically be expected to know about or participate in. *Antonelli*, 81 F.3d at 1428-29. Indeed, Mr. Jones specifically alleges that these defendants are aware of the situation (*e.g.,* Am. Compl. at P. 12); provide no safeguards to address the situation (*e.g.,* Am. Compl. at Pp. 12, 13, 17, 18); and that there exists an "*alliance* between officials and gangs" (Am. Compl. at P. 14) (emphasis original). No such allegations are made against Dr. Dunlap. Thus, the amended complaint is sufficient to state a claim for individual capacity liability against Messrs. Sheahan, Velasco, and Edwards – but not Dr. Dunlap – on the failure to protect claim.

As for the retaliation claim, Mr. Jones alleges that his transfer was orchestrated by defendant Edwards (who runs the protective custody unit), and that this alleged retaliatory transfer was "embraced by Dr. Dunlap" (Am. Compl. at P. 27). Mr. Jones specifically alleges that defendants Edwards and Dunlap "communicated as to how they were going to solve the problems and eliminate the threat I posed towards exposing their wrongful acts" (*Id.*). By contrast, no such allegations were made against defendants Sheahan and Velasco regarding the transfer. Accordingly, Mr. Jones's

19

allegations are sufficient to state an individual capacity liability claim against defendants Edwards and Dunlap – but not Sheahan and Velasco – on the retaliation claim.

**B.**

Actions brought against governmental employees in their official capacities are actually claims against the governmental entity for which they work. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom or practice. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).

Mr. Jones contends that a widespread practice of allowing non-gang member targeting at Cook County Jail by defendants Sheahan, Velasco, and Edwards exists unchecked. Put another way, Mr. Jones alleges that these defendants knew that the jail policies or practices they maintain would permit gang targeting of non-gang member detainees to flourish. No such allegations are made against Dr. Dunlap in regard to the gang targeting claims.

The Seventh Circuit has stated that a governmental unit can violate the rights of a person through a widespread practice which, although not authorized by written law or express policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged, or a least condoned, the misconduct of subordinate officers. A single act of misconduct will not normally

suffice, for it is the series that lays the premise of the system of inference. *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995).

Here, Mr. Jones claims that gang members have assaulted him five times – both while in the general population and while in protective custody. From this, he alleges that defendants should be aware of the violent atmosphere that permeates the jail and should therefore be on notice that steps need to be taken to control the gang situation. The Court finds that Mr. Jones has stated a claim against defendants Sheahan, Edwards, and Velasco – but not Dunlap – in their official capacities in regard to the gang targeting claim.

Insofar as Mr. Jones seeks to pursue official capacity claims against defendants Edwards and Dunlap on the retaliation claim, the amended complaint cannot stand. The allegations of retaliation are plainly directed to actions that these defendants allegedly took personally; there is no allegation that there is a custom or practice of retaliation against persons who complain about medical care or who assist other detainees with their legal claims by transferring them out of protective custody. Therefore, any official capacity claims concerning the retaliation allegations are dismissed.

## CONCLUSION

To summarize, the Court has ruled on the pending motions as follows:

1. Defendants' motion to strike portions of plaintiff's response to the motion to dismiss (Doc. #36-1) is denied.

2. Mr. Jones's motion for declaratory judgment (Doc. #21-1) is denied.

3. Defendants' motion to dismiss (Doc. #17-7) is granted in part and denied in part as follows:

A. The motion is granted as to plaintiff's medical claims, which are dismissed with prejudice. Those claims may not be repleaded.

B. The motion is granted as to plaintiff's claims concerning conditions of confinement, but with leave to amend if he wishes to attempt to do so (under the guidelines described below).

C. The motion is denied as to plaintiff's failure to protect claims against defendants Sheahan, Velasco and Edwards, both in their individual and official capacities, and granted as to defendant Dunlap in her individual and official capacity.

D. The motion is denied as to plaintiff's retaliation claim against defendants Edwards and Dunlap in their individual capacity, and granted as to defendants Edwards and Dunlap in their official capacities and as to defendants Sheahan and Velasco in their individual and official capacities.

In considering these motions, the Court would be remiss if it did not point out that Mr. Jones's amended complaint did not comply with Rule 8(a)(2) of the Rules of Civil Procedure, which provides that a pleading shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Mr. Jones's amended complaint was 29 pages long, and instead of setting out a chronology of events in an orderly fashion, Mr. Jones writes about an event, jumps to others, and then goes back to an event he discussed earlier.

In order to provide the defendants and the Court with a clear and straightforward complaint, the Court will grant Mr. Jones 30 days from the date of this Memorandum Opinion and Order in which to file a second amended complaint. In that second amended complaint, Mr. Jones shall

divide his assertions into the remaining claims: (1) that defendant Sheahan, Velasco and Edwards are liable, in their personal and official capacities, for failure to protect him from inmate assault; and (2) that defendants Edwards and Dunlap are liable in their personal capacities for transferring him from the protective custody unit in retaliation. If Mr. Jones wishes to do so, he may attempt to reassert a claim based on his conditions of confinement; if he does so, he must offer allegations sufficient to show why each defendant on any such claim should be liable individually or officially. However, Mr. Jones may not attempt to replead his medical care claim, which has been dismissed with prejudice.

Within each of the claims he asserts in the second amended complaint, Mr. Jones should start with the earliest event, finish with it, and then move to the next one. Mr. Jones should set forth his allegations without legal arguments. To enforce these requirements, **the Court limits Mr. Jones's Statement of Claim in his second amended complaint to no more than ten pages (that is, he may add eight pages (7a, 7b, 7c, 7d, 7e 7f, 7g, and 7h)) to the two pages already supplied in the amended complaint form.** The amended complaint must be on the forms required under Local Rule 81.1 of this Court. The Clerk is directed to send Jones one copy of the civil rights complaint form and instructions for filing along with a copy of this memorandum opinion and order. Mr. Jones must write both the case number and the judge's name on the complaint and return the originally filled out and signed form and a copy for the judge to the Prisoner Correspondent. Mr. Jones must also serve a copy of the second amended complaint on Assistant State's Attorney Christina M. Demakopoulos.

The amended complaint replaces or supersedes the original complaint. In other words, after Mr. Jones files this second amended complaint, the Court will no longer consider either the original or the first amended complaint. Thus, allegations or claims contained in either the original or the first amended complaint will not be considered if they are not included in the second amended complaint.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated:** September 22, 2000

U:\09C3669.002.wpd