# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3669 | **DATE** | 10/12/2001 |
| **CASE TITLE** | Stanley Jones vs. Sheriff Michael Sheahan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to dismiss Mr. Jones's claim as to his conditions of confinement [doc. # 59-1] is denied. Defendants are given 20 days from the date of this Memorandum Opinion and Order to answer or otherwise plead to the second amended complaint. The matter is set for a status conference on 11/15/01 at 10:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 15 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/12/2001 | |
| | | date mailed notice | |
| JJK | courtroom deputy's initials | JJK7 | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

Filed for docketing
01 OCT 12 PM 3: 34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY JONES, | ) |
| Plaintiff, | ) |
| v. | ) No. 99 C 3669 |
| | ) Magistrate Judge Sidney I. Schenkier |
| SHERIFF MICHAEL SHEAHAN, JAMES EDWARDS, and ERNESTO VELASCO | ) |
| Defendants. | ) |

DOCKETED
OCT 1 5 2001

**MEMORANDUM OPINION AND ORDER**

In its Memorandum Opinion and Order of September 22, 2000 ("Opinion I"), this Court granted in part and denied in part defendants' motion to dismiss a complaint filed by Stanley Jones, who was a pre-trial detainee at the Cook County Department of Corrections ("Cook County Jail") when he filed his original complaint. In that opinion, the Court: (a) denied plaintiff's motion for declaratory judgment; (b) dismissed with prejudice plaintiff's medical claims; (c) denied the motion to dismiss plaintiff's failure to protect claim against defendants Sheahan (the Sheriff of Cook County), Edwards (the superintendent of the protective custody unit at Cook County Jail), and Velasco (the director of Cook County Jail); (d) dismissed the retaliation claim against Messrs. Sheahan and Velasco in their individual and official capacities and against Mr. Edwards and Ms. Dunlap (a doctor at Cook County Jail) in their official capacities, but denied the motion to dismiss the retaliation claim against them individually; and (e) dismissed plaintiff's claim concerning conditions of confinement, but allowed him an opportunity to replead that claim.

After several extensions of time, Mr. Jones filed his second amended complaint on April 23, 2001. On May 3, 2001, Mr. Jones moved to further amend his complaint, asking that defendant Dr. Dunlap and all claims against her be dismissed from the action. The Court granted that motion on May 18, 2001. Thus, as presently constituted, the second amended complaint asserts the failure to protect claim, the retaliation claim, and the conditions of confinement claim.

Presently pending before the Court is defendants' motion to dismiss Mr. Jones's conditions of confinement claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (doc. # 59-1). That motion has been fully briefed. The parties have consented to have this case heard by a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motion to dismiss is denied.

## I.

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, a court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). Accordingly, "*pro se* complaints are to be liberally construed." *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

However, while it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir. 1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). All plaintiffs – whether *pro se* or represented – must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990).

## II.

In line with the foregoing authorities, the following factual statement is drawn from plaintiff's second amended complaint. Because defendants' motion seeks to have only the conditions of confinement claim dismissed, the Court will relate only the allegations related to that claim.

Mr. Jones alleges that he entered Cook County Jail in May 1997 and was assigned to the psychiatric ward. In October 1997, he had recovered sufficiently to be discharged from the psychiatric ward and was assigned to Division 9 general population in-housing unit 3-C. He returned to the psychiatric unit around November 13, 1997, and was released on December 31, 1997, to Division 9, unit 3-F; from there he was transferred to the 1-A "medication" unit. Mr. Jones was in general population from January 13, 1998 through October 29, 1998, when his psychiatrist sent him

back to the psychiatric unit because he had lost 10 to 12 pounds and exhibited other abnormal characteristics. On February 8, 1999, Mr. Jones was again released to Division 9 and was assigned to the 1-D protective custody unit because of his fear of attacks.

Mr. Jones claims that defendants Sheahan, Velasco and Edwards were deliberately indifferent or acted with reckless disregard to his health and safety, or both, by subjecting him to improper, inhumane, torturous, and injurious conditions of confinement, thereby causing him mental and physical injury, pain and suffering. In particular, Mr. Jones alleges the following conditions.

*First*, Mr. Jones alleges that he was subjected to extreme levels of noise by gang members who yelled, beat steel tables while reciting "rap" songs, and slammed cards and dominoes onto tables. Excessive noise emanated from the sound of basketballs; televisions being played at full volume all day and at a volume at night that largely prevented sleeping; streams of water from shower heads hitting tile shower floors; and deafening outbursts from other detainees who were viewing sports events. Because Mr. Jones had no respite from these noises, he was never able to relax or concentrate. The excessive noise induced compulsions such as wanting to scream out for silence, holding his head and rocking back and forth, or growling like an animal or laughing for no reason.

*Second*, Mr. Jones claims that dull, flat paint colors and the yellowish glow from sodium lamps combined to impart a surrealistic, disorienting effect to the unit. This caused constant eye strain which led to deterioration of Mr. Jones's vision; he now has to wear bifocal glasses.

*Third*, Mr. Jones complains that the unit lacked any seating other than steel stools. Mr. Jones therefore either had to sit on these stools or lie on the concrete floor for five hours each day which he claims rose to the level of physical torture.

*Fourth*, Mr. Jones alleges that mice infested his food. In addition, detainees were given malodorous and foul-tasting water, while the staff either brought in or were provided bottled water. Roaches got into Mr. Jones's bed at night, and the bed itself consisted only of a sheet of steel covered with a three-inch thick foam mattress, which did not adequately cushion or provide proper body support. This, combined with the incessant noise and vermin, caused Mr. Jones to suffer sleep deprivation and constant fatigue, lower back pain, aches, soreness, stiffness, stress, and anguish.

*Fifth*, Mr. Jones claims he had limited access to books, magazines, or newspapers, which resulted in extreme deprivation of information and intellectual stimulation.

*Sixth*, Mr. Jones alleges that the ventilation system was improperly maintained, causing the temperatures to fluctuate from excessively hot to excessively cold. The air was so dry that Mr. Jones experienced constant headaches, painful nasal irritations, colds, and developed arthritis.

### III.

Defendants make several arguments in support of their motion to dismiss, which we address in turn.

### A.

Mr. Jones has added to his original allegations of improperly maintained air conditioning, poor lighting, excessive noise, and inadequate heat and hot water. Specifically he claims that the paint color caused eye strain, that he was subjected to tainted food and drinking water, that he has inadequate access to reading materials, that his bed was insect-infested, and that the stools and mattresses caused him pain and inability to sleep. Defendants argue that these new assertions by Mr. Jones must be disregarded because they were not set forth in his original complaint and thus are time-barred. The Court disagrees.

Defendants are correct that the applicable statute of limitations is two years. *See Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992); *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). However, Rule 15(c)(2) provides that an amended complaint will relate back to the date of the original complaint so long as the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" Fed. R. Civ. P. 15(c)(2). This circuit has held that relation back is permitted when "an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Amer.*, 93 F.3d 372, 379 (7th Cir. 1996). "[F]or relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery." *See id.*

In Mr. Jones's second amended complaint, any new conditions of confinement that he contends constitute cruel and unusual punishment relate back to his original complaint. As discussed later, one of the new claims – extremely limited or complete inaccessibility to books, magazines, or newspapers – is essentially a First Amendment claim. However, even though this claim falls under a different amendment to the Constitution, it arises from the same core of facts. The Court accordingly declines to dismiss any new claims Mr. Jones has asserted in his amended complaint on the basis that they are time-barred.

**B.**

Defendants argue that the conditions Mr. Jones cites fail to meet the objective standard, set forth in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), necessary to make out a claim for cruel and unusual punishment. In other words, defendants claim that none of the conditions – taken singly or together – are sufficiently serious to rise to the level of a constitutional claim.

We reject this argument, which disregards the Court's ruling in Opinion I. In that opinion, the Court already had held that Mr. Jones's original claims of inadequate ventilation, excessive noise, and inadequate heat are deprivations serious enough to meet the objective standard of *Wilson*. *See Jones v. Sheahan*, 2000 WL 1377114 at *10 (*citing Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994). The Court will now examine Mr. Jones's additional allegations concerning his conditions of confinement.

Mr. Jones claims he has extremely limited or complete inaccessibility to books, magazines, or newspapers. Exactly what Mr. Jones means by this is unclear; he plainly does not have a right to go to a general reading library. *See Antonelli*, 81 F.3d at 1433, *citing Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991). Denial of reading materials is not a violation of the Eighth Amendment because it is not a deprivation of "basic human needs" or "life's necessities." *Antonelli*, 81 F.3d at 1433 n.8, *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, Mr. Jones's First Amendment rights may be implicated if he is arbitrarily denied access to published material. *See Antonelli*, 81 F.3d at 1433 (*citing Martin v. Tyson*, 845 F.2d 1451, 1453 (7th Cir.) (per curiam) (citing cases), *cert. denied*, 488 U.S. 863 (1988)). It may also violate a pre-trial detainee's right not to be punished under the Due Process Clause of the Fourteenth Amendment. *Antonelli*, 81 F.3d at 1433. The Court accordingly finds that Mr. Jones's claim as to extremely limited or complete inaccessibility to reading materials states a claim under the First Amendment and the Due Process Clause of the Fourteenth Amendment, but not under the Eighth Amendment.

Mr. Jones claims that the color of the paint on the walls in combination with the glow from sodium lamps has caused him constant eye strain and led to deterioration of his vision. If the lighting in the jail is objectively insufficient it may violate both the First Amendment, because it

7

would interfere with Mr. Jones's ability to read, and the Eighth Amendment. *Antonelli*, 81 F.3d at 1433 (*citing Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1088 (7th Cir. 1986)). Accordingly, the Court finds that Jones's claim as to insufficient lighting meets the objective prong of *Wilson* and may also state a First Amendment claim.

Mr. Jones claims that during the five hours each day that he was locked out of his cell, he could either sit on the steel stools, stand up, or lie on the concrete floor. In order to state a conditions of confinement claim of constitutional significance, the challenged condition must amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Punishment requires something more than routine discomfort. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Punishment in the constitutional sense requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Bell* at 542. The Court fails to see how Mr. Jones's allegations amount to punishment. Mr. Jones himself states that he had at least three alternatives for changing position during the time he was out of his cell. Although the steel stools may not have been as comfortable as padded seating, they do not rise to the level of an extreme deprivation. The Court accordingly finds that Mr. Jones's claim as to the steel stools does not meet the objective prong of *Wilson*.

Mr. Jones also claims that the foam mattress on a steel bed failed to provide proper body support. Many of the judges in this district have determined that sleeping on a mattress on the floor is not a constitutional violation so long as it is not done as a punitive measure. *See Jacobs v. Anderson*, 2000 WL 1644503 *1 (N.D. Ill. 2000) and cases cited therein. Although Mr. Jones claims that his sleeping arrangement caused sleep deprivation, constant fatigue, lower back pain, aches, soreness, stiffness, stress, and anguish; he does not claim either that he had some kind of pre-existing

medical condition that defendants knew about, or that defendants intended the beds to serve as a punitive measure. The Court accordingly dismisses Mr. Jones's claim in regard to his sleeping arrangement.

Mr. Jones claims that mice get into the food and that the water is malodorous and foul tasting. Although he does not identify any specific illness he has suffered from either the food or the water, he complains of constant fatigue and other ailments that may well be caused by tainted food and water. An inmate is entitled to a healthy environment including "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980)). Whether Mr. Jones can prove his allegations is not the question at this point; the question is whether the allegations state a claim. The Court holds that the tainted food and water claim meets the objective prong of *Wilson*.

In sum, the Court finds that Mr. Jones's claims as to inadequate ventilation, excessive noise, inadequate heat, insufficient lighting, and tainted food and water meet the objective prong of *Wilson*. In addition, Mr. Jones's claim as to the denial of reading materials states a claim under the First Amendment.

## C.

Defendants argue that even if any of Mr. Jones's claims meet the objective prong of *Wilson*, they fail to meet the subjective prong, which requires proof that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. Deliberate indifference is defined as:

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In addition, defendants argue that Mr. Jones has not complied with Opinion I (or the subjective prong of *Wilson*) because he has failed to allege why defendants should be held liable in either their individual or official capacities. In its Opinion I, the Court stated:

> [F]rom the rambling nature of both Mr. Jones's amended complaint and his response to the motion to dismiss, the Court cannot find allegations as to how the individual defendants acted with deliberate indifference as to these alleged conditions of his confinement. The amended complaint lacks coherent allegations as to how each of the defendants was aware of and deliberately indifferent to these conditions, so as to make them individually liable. Nor does the amended complaint allege that the defendants maintained policies or customs that they knew would result in the challenged conditions, so as to make them liable in their official capacities.

*Jones v. Sheahan*, 2000 WL 1377114, at *10.

While Mr. Jones's second amended complaint still is far from a model of clarity (as might be expected in a *pro se* pleading), it nevertheless provides enough – at the pleading stage – to allege the defendants' awareness of the conditions. Mr. Jones has attached to his second amended complaint two letters, dated June 29, 1998, and March 17, 1999, which he wrote to defendant Edwards, complaining about numerous conditions.[1] Mr. Jones claims that he has attempted to use the grievance system, but that grievances are either ignored or the complainant is branded in such a way as to invite repercussions from gang members. That is enough to allege Mr. Edwards's knowledge of, and indifference to, the conditions.

Although Mr. Jones does not specifically state that he informed either Sheriff Sheahan or Director Velasco personally about the conditions, to survive a motion to dismiss, "a pleading must

---

[1] Defendants object to plaintiff's use of these letters as attachments to his complaint (Defs.' Mem. at 5). However, a copy of any written instrument which is an exhibit to a complaint is considered to be a part of the pleadings. Fed. R. Civ. P. 10(c).

10

only contain enough to 'allow the court and the defendant[s] to understand the gravamen of the plaintiff's complaint,'" *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (citing *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996). *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), gives further guidance as to whether Mr. Jones has sufficiently linked the defendants to the conditions. In *Antonelli*, the Seventh Circuit recognized that high level officials cannot be held liable in their individual capacities by virtue of the doctrine of *respondeat superior* and explained that high level officials normally cannot be held liable for "clearly localized, non-systemic violations." *Id.* at 1428-29. However, high level officials are expected to have personal responsibility for systemic conditions. *Id.* at 1429. The Court has reviewed Mr. Jones's facts in light of the criteria set out in *Antonelli*, and concludes that the conditions he alleges are systemic conditions for which the defendants would be expected to have knowledge and for which, under *Antonelli*, they may be held liable. However, their potential liability is in their individual capacities; Mr. Jones has failed to allege a sufficient basis for liability on the conditions of confinement claim against the defendants in their official capacities. *See, e.g., Jacobs v. Anderson*, 2000 WL 1644503 at *3 (N.D. Ill. 2000).

Mr. Jones's assertions are sufficient to put defendants on notice as to the claim against them. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). As noted earlier, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson*, 910 F.2d at 1520. Although Mr. Jones will have to proffer evidence to support his allegations at a later stage of this litigation, he does not need to do so now. The Court accordingly denies defendants' motion to dismiss on the ground that Mr. Jones has not sufficiently linked defendants to the claim that his conditions of confinement violated the Constitution.

11

**D.**

Defendants argue that because Mr. Jones has alleged only mental or emotional injuries, the Prison Litigation Reform Act ("PLRA") prohibits claims for mental or emotional injury without a prior showing of physical injury. 42 U.S.C. § 1997e(e) of the PLRA provides:

> No Federal Civil Action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Indeed, if Mr. Jones were seeking damages only for mental or emotional injuries, then his claims would clearly be barred. *See Cassidy v. Indiana Dep't of Corrections*, 199 F.3d 374, 375 (7th Cir. 2000) (Section 1997e(e) barred blind inmate's claims for damages for mental and emotional injuries under the Americans with Disabilities and Rehabilitation Act).

However, Mr. Jones does not merely claim mental pain and suffering. He claims he suffered various physical injuries as a result of the conditions, including deterioration of his vision, sleep deprivation and fatigue, lower back pain, aches, soreness, stiffness, onset of arthritis, constant headaches, painful nasal irritations, and colds. This is sufficient physical injury to permit the case to proceed. We reserve for a later time the question of whether, if Mr. Jones can prove his conditions of confinement claim, he can show physical injury sufficient to support an award of damages for mental pain and suffering.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss Mr. Jones's claim as to his conditions of confinement (doc. # 59-1) is denied. Defendants are given 20 days from the date of

12

this Memorandum Opinion and Order to answer or otherwise plead to the second amended complaint. The matter is set for a status conference on November 15, 2001, at 10:30 a.m.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: October 12, 2001